UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THERESA G., | ) | Case No. 5:20-cv-02621-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**INTRODUCTION**

On December 20, 2020, plaintiff Theresa G. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents five disputed issues for decision: (1) whether the

1

Administrative Law Judge ("ALJ") erred at step two; (2) whether the ALJ properly considered plaintiff's subjective testimony; (3) whether the ALJ properly considered the opinion of consultative examiner Dr. Editha Uy; (4) whether the ALJ properly considered the opinion of Dr. Douglas Hay; and (5) whether the ALJ fully and fairly developed the record.[1]  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-16; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-18.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, any error in considering the physicians' opinions was harmless.  But the court finds the ALJ erred at step two, did not properly evaluate plaintiff's subjective testimony, and failed to fully and fairly develop the record.  The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 51 years old on the alleged disability onset date, attended two years of college.  AR at 75, 272.  Plaintiff has past relevant work as a school secretary and in a composite job encompassing the duties of a teacher aide II and translator.  *Id*. at 51-54.

On May 30, 2018, plaintiff filed applications for a period of disability, DIB, and SSI due to left knee pain, rotator cuff injuries, diabetes, headaches, yeast infections, vaginal cysts, anxiety, high cholesterol, high blood pressure, and muscle pain.  *Id*. at 76, 91.  The applications were denied initially and upon

---

[1]   Although plaintiff only enumerates four issues – issues two through five – she also argues at length that the ALJ erred at step two in her credibility discussion.  *See* AR at 4-6.

reconsideration, after which plaintiff filed a request for a hearing.  *Id*. at 141-55.

On May 19, 2020, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  *Id*. at 35-74.  The ALJ also heard testimony from Rebecca Williams, a vocational expert ("VE").  *Id*. at 51-52, 54, 70-73.  On June 2, 2020, the ALJ denied plaintiff's claims for benefits.  *Id*. at 15-30.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since January 3, 2017, the alleged onset date.  *Id*. at 17.

At step two, the ALJ found plaintiff suffered from the severe impairments of obesity; aggravating osteoarthritis and chondromalacia of the left knee, status post total knee replacement in March 2020; and degenerative joint disease of the right shoulder, status post right shoulder rotator cuff repair in June 2019.  *Id*. at 18.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1.  *Id.* at 22.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), with the limitations that plaintiff: must change positions every 30 minutes for a brief period that does not prevent her from remaining on task; could frequently reach with the right upper extremity, including overhead reaching; could reach with the left upper extremity without limitation; could frequently handle bilaterally, and could finger without limitation; could

---

[2]    Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  occasionally climb ramps or stairs, balance, stoop, kneel, or crouch; could not

2  crawl or climb ladders, ropes, or scaffolds; could never work in the presence of

3  unprotected heights or hazardous machinery; and should not be required to operate

4  a motor vehicle as part of her job duties.  *Id.* at 23.

5      The ALJ found, at step four, that plaintiff was able to perform her past

6  relevant work as a school secretary.  *Id.* at 29.

7      Consequently, the ALJ concluded plaintiff did not suffer from a disability as

8  defined by the Social Security Act.  *Id.* at 30.

9      Plaintiff filed a timely request for review of the ALJ's decision, which the

10  Appeals Council denied.  *Id.* at 1-3.  The ALJ's decision stands as the final

11  decision of the Commissioner.

12                          **III.**

13                   **STANDARD OF REVIEW**

14      This court is empowered to review decisions by the Commissioner to deny

15  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

16  Administration ("SSA") must be upheld if they are free of legal error and

17  supported by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th

18  Cir. 2001) (as amended).  But if the court determines the ALJ's findings are based

19  on legal error or are not supported by substantial evidence in the record, the court

20  may reject the findings and set aside the decision to deny benefits.  *Aukland v.*

21  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

22  1144, 1147 (9th Cir. 2001).

23      "Substantial evidence is more than a mere scintilla, but less than a

24  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

25  "relevant evidence which a reasonable person might accept as adequate to support

26  a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

27  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

28

1  finding, the reviewing court must review the administrative record as a whole,

2  "weighing both the evidence that supports and the evidence that detracts from the

3  ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

4  affirmed simply by isolating a specific quantum of supporting evidence.'"

5  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

6  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

7  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

8  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

9  1992)).

**IV.**

**DISCUSSION**

**A.**   **The ALJ Erred at Step Two**

13       Plaintiff does not expressly identify a step two error as a disputed issue;

14  however, plaintiff devotes nearly three pages of her memorandum to arguing the

15  ALJ erred at step two.  AR at 4-6.  Specifically, plaintiff contends the ALJ failed to

16  recognize her severe left shoulder impairment and erroneously found that she

17  underwent a right shoulder rotator cuff repair in June 2019.  *Id.*

18       At step two, the Commissioner considers the severity of the claimant's

19  impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "[T]he step-two

20  inquiry is a de minimis screening device to dispose of groundless claims.  *Smolen*

21  *v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

22       Here, the ALJ found that plaintiff suffered from degenerative joint disease of

23  the right shoulder, status post right shoulder rotator cuff repair in June 2019, and

24  did not find that plaintiff suffered from any left shoulder impairment.  AR at 18.

25  But the medical records reflect plaintiff suffered from rotator cuff and labrum

26  tears, as well as osteoarthritis, in both shoulders.  *Id.* at 444, 689-91, 1084.  And

27  the medical records reflect plaintiff underwent *left* shoulder rotator cuff repair in

28

June 2019 and continued to complain of pain in the left shoulder eight months after. *Id*. at 608-09, 1092. Arguably, the ALJ may have simply committed a typographical error at step two since the ALJ discusses plaintiff's left shoulder surgery elsewhere in the decision. Nonetheless, even if the surgery finding was a typographical error, the ALJ still failed to find the left shoulder impairment to be a severe impairment despite the medical evidence that it was.

Accordingly, the ALJ erred at step two. The ALJ's failure to find a severe left shoulder impairment, and her incorrect surgery finding, were not supported by substantial evidence.

**B.      The ALJ Failed to Properly Evaluate Plaintiff's Testimony**

Plaintiff contends the ALJ failed to properly evaluate her testimony. P. Mem. at 2-7. Specifically, plaintiff argues the ALJ's reasons for an adverse credibility finding were not clear and convincing and supported by substantial evidence. *Id*.

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms. In adopting SSR 16-3p, the SSA sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2.

> [SSR 16-3p] makes clear what our precedent already required: that
> assessments of an individual's testimony by an ALJ are designed to
> evaluate the intensity and persistence of symptoms after the ALJ finds
> that the individual has a medically determinable impairment(s) that
> could reasonably be expected to produce those symptoms, and not to
> delve into wide-ranging scrutiny of the claimant's character and
> apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step

analysis.  *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting *Trevizo*, 871 F.3d at 678).  First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Id.*  Second, if plaintiff satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities.  *Id.*

In assessing intensity and persistence, the ALJ may consider: the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms.  *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen*, 80 F.3d at 1284.  To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so.  *Id.* at 1283-84.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged.  AR at 24.  At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony.  The ALJ discounted plaintiff's testimony because: (1) the objective evidence did not support her allegations; (2) her impairments responded well to surgery; and (3) the record contains inconsistent statements by plaintiff.  *Id*. at 24-27.

In an Adult Function Report dated July 5, 2018, plaintiff stated she could only sit for 15 minutes, could walk for 15 minutes but for no more than a quarter

mile, needed to rest every 100 feet when walking, and could lift no more than five pounds. *Id*. at 289, 293.  At the May 19, 2020 hearing, plaintiff testified she had left shoulder surgery in June 2019, needed right shoulder surgery, and had a total knee replacement in March 2020. *Id*. at 47, 60.  Plaintiff further testified she had issues climbing stairs, could not carry or lift more than five pounds due to a torn rotator cuff in the right shoulder, and could only walk about 20 steps without the walker, stand for about a minute and a half at a time without the walker, and sit for 15-20 minutes. *Id*. at 44-45, 59-60.  With regard to her ability to lift and carry, plaintiff explained her left shoulder surgery did not go well and she had another tear in her right shoulder. *Id*. at 45-46, 60.  Consequently, a doctor told her not to carry more than five pounds. *Id*. at 60, 62.

The ALJ's first reason for discounting plaintiff's testimony was that plaintiff's alleged limitations were inconsistent with the objective findings. *Id*. at 24-26; *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (the lack of objective medical evidence to corroborate pain allegations is one factor, in conjunction with others, the ALJ may consider in his or her credibility determination).  The ALJ acknowledged plaintiff's history of musculoskeletal impairments resulting in two prior right shoulder and left knee surgeries and some of the recent objective findings supporting plaintiff's allegations, including: the September 2018 x-rays indicating mild osteoarthritis and rotator cuff in the right shoulder; the September 2018 x-rays reflecting mild osteoarthritis and small joint effusion in the left knee; and the October 2018 MRI revealing multiple tears and osteoarthritis in the left knee.  AR at 24-26; *see id*. at 386, 431, 450-51, 474-75, 481, 782.  But the ALJ found the alleged severity of plaintiff's limitations were nonetheless not supported by the objective medical evidence. *See id*. at 24-26. The ALJ noted, among other things, plaintiff: had full range of motion in her extremities in October 2017, September 2018, August 2019, November 2019, and

December 2019; no swelling in the knees in December 2017, March 2018, and August 2018; a normal, unassisted gait in August 2018; near full motor strength after left shoulder surgery in July 2019; and no point tenderness in her shoulder in January 2020.  *See id*.

Although the ALJ's cited objective findings were, for the most part, factually accurate, the ALJ's decision contains some erroneous analysis of the medical evidence.  For instance, the ALJ found plaintiff's statement that she could not lift any weight was inconsistent with the examination finding that she had 4/5 motor strength in her upper extremity.  *Id.* at 27.  But the treatment notes actually reflect that plaintiff stated she could not lift with her left upper extremity, exhibited 4/5 motor strength in her right upper extremity, and the doctor did not comment on the motor strength in her left arm.  *See id*. at 552-53.  The ALJ's finding that plaintiff's left shoulder pain resulted from a second fall in September 2019, thereby implying the pain was from trauma and temporary, was similarly inaccurate.  *Id*. at 25.  The records indicate plaintiff only fell in July 2019 and the pain in September 2019 was not from a recent fall.  *See id*. at 513.  Finally, the ALJ stated a February 2020 treatment note showed plaintiff was negative for weakness, but the note actually indicates she was negative for weakness from neurological problems, which plaintiff does not allege she has.  *See id*. at 27, 1071.

The analysis also appears to be somewhat incomplete in that the ALJ failed to discuss important findings that support plaintiff's alleged symptoms, such as: the October 2018 examination findings revealing patellar tenderness, effusion, a positive McMurray test, and patellar grind in the left knee; the November 2018 examination indicating multiple positive diagnostic tests for both shoulders and painful range of motion in the left shoulder; the January 2019 MRI of the left shoulder reflecting multiple tears and osteoarthritis; and the September 2019 finding that although plaintiff had full range of motion in her left shoulder, she had

pain with motion.  *Id*. at 443-44, 455, 496, 691-92.  Although an ALJ does not
need to discuss every single piece of evidence, these objective findings were
probative and should have been evaluated.  *See March v. Comm'r*, 462 Fed. Appx.
671, 673-64 (9th Cir. 2017) (citing *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th
Cir. 2003).  Morever, the ALJ glossed over the fact that plaintiff's treating
physicians observed the same objective findings she cited and determined plaintiff
required surgery for her impairments.  *See id*. at 676, 1092; *see also Dowling v.
Comm'r*, 2021 WL 3488285, at *3 (E.D. Cal. Aug. 9, 2021) (ALJ's finding that the
objective medical evidence did not support plaintiff's complaints were not
supported by substantial evidence because, as the ALJ noted, the record as a whole
was consistent and plaintiff ultimately required surgery).

The mere fact that surgery was required does not necessarily mean that
plaintiff was disabled or that her limitations were as severe as she purports.  But, in
light of plaintiff's complete history and the fact that plaintiff required surgeries, it
would appear that the objective findings do support plaintiff's complaints.
*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("[The Court] must
consider the entire record as a whole . . . and may not affirm simply by isolating a
specific quantum of supporting evidence.").  Thus, the ALJ's finding that
plaintiff's allegations were inconsistent with the objective evidence is not
supported by substantial evidence.

Even if the objective findings supported the ALJ's finding, the lack of
objective evidence to support pain allegations, by itself, does not constitute
substantial evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en
banc).  But as discussed below, the ALJ's other reasons for discounting plaintiff's
symptoms are similarly not supported by substantial evidence.

The ALJ's second reason for finding plaintiff less credible was her
impairments responded well to surgery.  AR at 26; *see Flaten v. Sec'y of Health*

*and Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (claimant's positive results from surgery supported the ALJ's credibility determination).  With regard to plaintiff's left shoulder, the ALJ noted plaintiff had regained full range of motion by August 2019 – two months after surgery – but failed to note plaintiff experienced pain when moving the shoulder down and continued to experience pain through at least February 2020.  *See id.* at 509, 535, 1092.  The ALJ cites no medical evidence to support her finding concerning plaintiff's knee.  Instead, the ALJ acknowledges plaintiff's recovery was proceeding slower than anticipated due to her inability to attend physical therapy treatment during the pandemic, but surmises that her condition will improve once she is able to restart physical therapy.  *Id.* at 26-27.  Although the ALJ may be correct, a guess is not substantial evidence.

Finally, the ALJ cited inconsistencies within the record as a basis for discounting plaintiff's testimony.  *Id.* at 26; *see Bunnell*, 947 F.2d at 346 (inconsistencies in testimony is a basis for an adverse credibility finding).  Specifically, the ALJ noted plaintiff stated she could walk up to 100 feet before needing to rest in her Function Report, told an examining physician that she could be physically active for up to 4000 feet,[3] and testified at the hearing that she could walk no more than 20 feet unassisted but her walker was issued for a three-month period.  AR at 26; *see id.* at 59, 293, 1069, 1095.  Plaintiff's statements in her Function Report and at the hearing were inconsistent, but the differences in time and circumstance during which they were made account for the discrepancy.  Plaintiff completed the Function Report in July 2018, almost two years before her knee surgery.  *See id.* at 296.  In contrast, plaintiff's hearing testimony occurred

---

[3]   It is unclear whether Dr. Hassan Quadri is reporting what plaintiff told him about her physical capabilities or it was his opinion.  Regardless, as discussed below, this figure appears to be a typographical error.

just two months after knee surgery.  *Id.* at 59.  Plaintiff's hearing testimony reflected the fact that she required the walker for assistance at that point in her recovery, was within the three-month window, and did not imply that she would require the walker indefinitely.  As for her statement to her physician that she could be active for up to 4000 feet, it was indeed inconsistent with her other statements.  But in light of the magnitude of the deviation from plaintiff's other statements combined with the multiple typographical errors in that specific treatment note, the statement appears suspect and to be an error.  Even if the doctor did not err in transcribing plaintiff's account of how physically active she could be, one inconsistent statement alone would not constitute substantial evidence.

In sum, the ALJ erred in discounting plaintiff's subjective allegations.  The ALJ failed to cite clear and convincing reasons supported by substantial evidence for discounting plaintiff's testimony.

**C.**    **The Errors in Evaluating Dr. Uy's Opinion and Dr. Hay's Opinion Were Harmless**

Plaintiff contends the ALJ improperly rejected Dr. Uy's opinion that plaintiff should be restricted to occasional overhead reaching with the right arm and Dr. Douglas Hay's opined walking and stair climbing limitations.  P. Mem. at 8-14.  Specifically, plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting Dr. Uy's overhead reaching limitation and specific and legitimate reasons for rejecting Dr. Hay's limitations.  *Id.*

RFC is what one can "still do despite [his or her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments.  20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2); *see* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

Among the evidence an ALJ relies on in an RFC assessment is medical evidence and opinions.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  For claims filed before March 27, 2017, the opinion of a treating physician was given more weight then an examining physician's opinion, which was given more weight than a reviewing physician's opinion.  *See Holohan*, 246 F.3d at 1202.  Under this previous hierarchy of medical opinions framework, the Ninth Circuit required an ALJ to provide clear and convincing reasons supported by substantial evidence to reject an uncontradicted opinion of a treating or examining physician, or specific and legitimate reasons supported by substantial evidence to reject a contradicted opinion of a treating or examining physician.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (as amended).

Under the revised regulations, for cases filed on or after March 27, 2017 such as this one, an ALJ will no longer defer or give specific evidentiary weight to any medical opinions.  20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see Thompson v. Comm'r*, 2021 WL 1907488, at *3 (E.D. Cal. May 12, 2021); *P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021).  Instead, an ALJ will consider the persuasiveness of the medical opinions and findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion.  20 C.F.R. §§ 404.1520c(b)-(c), 416.920c(b)-(c); *see Sylvester G. v. Saul*, 2021 WL 2435816, at *2 (C.D. Cal. June 15, 2021).  The most important of these factors are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may, but is not required to, explain how she or he considered the other three factors.  *Id*.  But when two or more medical opinions "about the same issue are both equally well-supported . . .  and consistent with the record . . . but are not exactly the same," the ALJ is then required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were

considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

### 1.  Dr. Editha Uy

Dr. Editha Uy, an internist, examined plaintiff and reviewed her medical records on August 28, 2018.  AR at 431-36.  Dr. Uy observed that plaintiff, in contrast to her claims about being unsteady and having difficulty walking, had a normal gait without an assistive device.  *Id.* at 432.  With regard to extremities, Dr. Uy observed peripheral pulses of 2+ and no clubbing, cyanosis, pedal edema, joint deformity, effusions, warmth, swelling, or pain on motion.  *Id.* at 433.  As for the upper extremities specifically, Dr. Uy observed plaintiff had normal range of motion in the left shoulder and reduced range of motion in her right shoulder.  *Id.* at 434.  Dr. Uy observed plaintiff had reduced range of motion in her left knee, as well as numbness in the left leg.  *Id.*  Based on her examination and review, Dr. Uy opined plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; push and pull frequently; walk and stand four hours out of an eight-hour workday; sit six hours out of an eight-hour workday; bend, stoop, kneel, crawl, walk on uneven terrain, climb ladders, and work at heights occasionally; and reach overhead on the right occasionally.  *Id.* at 435.

In reaching her RFC determination, the ALJ found Dr. Uy's opinion to be partially persuasive.  *Id.* at 28.  The ALJ noted Dr. Uy supported her opinion with detailed discussions of her observations.  *Id.* at 29.  The ALJ did not adopt Dr. Uy's standing and walking limitations because plaintiff's knee condition progressed after the consultative examination to the point that she required a total left knee arthroplasty.  *Id.*  Similarly, the ALJ did not adopt Dr. Uy's lifting and carrying limitations because plaintiff was subsequently diagnosed with a right rotator cuff tear.  *Id.*

Plaintiff argues that the ALJ was required to provide clear and convincing arguments for rejecting Dr. Uy's uncontradicted opinion regarding overhead

reaching with the right extremity.[4]  But as discussed above, that is the standard for cases filed before March 27, 2017.  The new regulations require an ALJ to articulate his or her reasoning for his or her persuasiveness finding, and specifically address the consistency and supportability of the opinion.  The Ninth Circuit has not yet addressed whether and how the revised regulations alter the analysis of the adequacy of an ALJ's reasoning.  *See J.M. v. Kijakazi*, 2022 WL 617120, at *13 (N.D. Cal. Mar. 2, 2022); *Robert D. v. Kijakazi*, 2021 WL 5905734, *3 (S.D. Cal. Dec. 14, 2021).  Some district courts in the Ninth Circuit have continued to require ALJs to provide clear and convincing or specific and legitimate reasons for rejecting an opinion, while others have not.  *Compare Stephanie B. v. Comm'r*, 2022 WL 72062, at *3 (W.D. Wash. Jan. 7, 2022) (courts are still bound by Ninth Circuit precedent); *Kathleen G. v. Comm'r*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (same); with *Gentry S. v. Kijakazi*, 2022 WL 1601413, at *4 (N.D. Cal. Mar. 31, 2022) (deferring to new regulations); *J.M.*, 2022 WL 617120, at *13 (concluding the holding in *Lambert v. Saul*, 980 F.3d 1266, 1268, 1274 (9th Cir. 2020), requires the court to defer to new regulations, even when they conflict with judicial precedent); *Teresa G. v. Kijakazi*, 2022 WL 298367, at *4 (S.D. Cal. Feb. 1, 2022) (the specific and legitimate reasons standard is no longer viable); *Jones v. Saul*, 2021 WL 620475, at *8-*9 (E.D. Cal. Feb. 17, 2021) (the new regulations effectively override or displace the contrary, pre-existing case law).  The Ninth Circuit, in *Lambert*, found that there are circumstances when circuit precedent is not controlling, including when prior authority is irreconcilable with the "'intervening higher authority' of an administrative agency's authoritative and reasonable interpretation of a statute." 980 F.3d at 1268 (concluding that SSA's interpretation of the Social Security Act

---

[4]   Both State Agency physicians opined plaintiff should be limited to occasional overhead reaching with the right upper extremity.  AR at 86, 118.

1    displaced prior precedent on the issue of a presumption of continuing disability).

2    As such, the court agrees that deference must given to the new regulations.

3           Thus, the questions are whether the ALJ properly evaluated Dr. Uy's opined

4    limitation under the new regulations and whether her rejection of the overhead

5    reaching limitation was supported by substantial evidence.  Here, the ALJ properly

6    evaluated Dr. Uy's opinion under the revised regulations, but her rejection of the

7    overhead reaching limitation was not supported by substantial evidence.  The ALJ

8    explained she found Dr. Uy's opinion partially persuasive.  AR at 28.  With regard

9    to plaintiff's right shoulder, Dr. Uy observed decreased range of motion, the motor

10   strength was slightly less compared to the left, and muscle tone was normal.  *Id.* at

11   29.  The ALJ explained, however, that medical evidence subsequent to Dr. Uy's

12   examination indicated plaintiff suffered from a right rotator cuff tear and therefore

13   Dr. Uy's lifting and carrying limitations were not persuasive.  Given the objective

14   evidence that the right shoulder impairment had progressed in severity since Dr.

15   Uy's examination and the ALJ's recognition of the increased severity when she

16   determined plaintiff required greater lifting and carrying limitations than Dr. Uy

17   opined, it is unclear why the ALJ would have rejected Dr. Uy's overheard reaching

18   limitation.  This rejection is inconsistent with the medical evidence and the ALJ's

19   own findings.

20          Nevertheless, the ALJ's error was harmless.  At the hearing, the ALJ

21   presented the vocational expert a hypothetical with the same RFC as the ALJ

22   determined except with the additional limitation of occasional overhead reaching

23   bilaterally.  *See* AR at 70-72.  The vocational expert testified that a person with

24   such limitations could still perform plaintiff's past relevant work as a school

25   secretary.  *Id*. at 72.  Thus, had the ALJ adopted Dr. Uy's overhead reaching

26   limitation, and not otherwise altered her RFC determination, plaintiff still would

27   have been found not disabled.

28

Plaintiff contends the error is not harmless because the vocational expert's testimony conflicts with the Dictionary of Occupational Titles ("DOT"), which defines the job as requiring frequent reaching.  P. Mem. at 12-13; Reply at 4-5; *see* DOT 201.362-022, 1991 WL 671670; *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) ("When there is an apparent conflict between the vocational expert's testimony and the DOT . . . the ALJ is required to reconcile the inconsistency."). In *Gutierrez v. Colvin*, 844 F.3d 804 (9th Cir. 2016), the Ninth Circuit considered whether a VE's testimony that a person with an overhead reaching limitation could work as a cashier conflicted with the DOT, and found that for a conflict with the DOT to be apparent, the VE's testimony must be at odds with the essential, integral, or expected parts of a job.  *Id*. at 808.  Recognizing that "not every job that involves reaching requires the ability to reach overhead," the Ninth Circuit looked at the typical duties of a cashier set forth by the DOT and applied common knowledge of the job to conclude there was no apparent conflict with the DOT in that instance.  *Id*.

As in *Gutierrez*, there is no apparent conflict between the VE's testimony and the DOT.  The DOT describes the duties of a school secretary job as:

> Performs secretarial duties in public or private school: Composes, or transcribes from rough draft, correspondence, bulletins, memorandums, and other material, using typewriter or computer. Compiles and files student grade and attendance reports and other school records.  Greets visitors to school, determines nature of business, and directs visitors to destination.  Talks with student encountering problem and resolves problem or directs student to other worker.  Answers telephone to provide information, take message, or transfer calls.  May order and dispense school supplies. May accept and deposit funds for lunches, school supplies, and

student activities.  May disburse funds, record financial
transactions, and audit and balance student-organization and other
school-fund accounts.  May take dictation in shorthand and
transcribe notes, using typewriter or computer.  May maintain
calendar of school events.  May oversee student playground
activities and monitor classroom during temporary absence of
teacher.

DOT 201.362-022.  The description indicates the job involves little or no overhead
reaching.  Common knowledge of the school secretary position also suggests that,
while the position may require frequent reaching, most of that reaching generally
would not be overhead.  Moreover, plaintiff's own testimony of her duties as a
school secretary does not suggest the job requires frequent overhead reaching.  *See*
AR at 50-51.

Plaintiff's reliance on *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir.
2017), is unavailing.  In *Lamear*, the plaintiff was limited to occasional handling,
fingering, and overhear reaching with the left upper extremity, but the vocational
expert testified he could perform the jobs of office worker, mail clerk, and parking
lot cashier, all of which required frequent handling, fingering, and reaching
pursuant to the DOT.  *Id*. at 1203.  The Ninth Circuit distinguished *Lamear* from
*Gutierrez*, noting that in contrast to *Gutierrez*, both common experience and the
DOT descriptions strongly suggest the use of both hands were "'essential, integral,
or expected'" to perform the jobs identified by the VE.  *Id*. at 1205-06.  Unlike
*Lamear*, common experience and the DOT description do not suggest that
overhead reaching is an essential part of the school secretary job.  Therefore,
*Lamear* does not support plaintiff's argument and there was no apparent conflict.

Accordingly, the ALJ's rejection of Dr. Uy's occasional overhead lifting
limitation was not supported by substantial evidence, but the error was harmless.

### 2.   Dr. Douglas Hay

Dr. Douglas Hay, an internist, treated plaintiff from at least 2014 through 2019. *Id.* at 657, 1015.  On May 17, 2016, Dr. Hay wrote a letter stating plaintiff was unable to walk more than 1/4 mile at any time and climb stairs due to severe osteoarthritis in her knees.  *Id*. at 828.  The ALJ did not discuss Dr. Hay's letter in the decision.

The regulations require an ALJ to consider all medical opinions.  20 C.F.R. §§ 404.1520c; 416.920c.  The ALJ therefore erred when she failed to consider Dr. Hay's opinion.  The question then is whether the ALJ's failure to consider Dr. Hay's opinion was harmless.

A medical opinion rendered prior to the alleged onset of disability is typically of limited relevance.  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").  Dr. Hay provided his opinion more than seven months prior to the alleged onset of disability, and his walking and stair climbing limitations were inconsistent with subsequent opinions by Dr. Uy and two State Agency physicians.  Morever, Dr. Hay did not cite any objective findings to support his opinion.  These factors suggest the ALJ's failure to consider Dr. Hay's opinion was harmless error.

In sum, the ALJ erred because her rejection of Dr. Uy's overhead reaching limitation was not supported by substantial evidence and she failed to consider Dr. Hay's opinion; however, both errors were harmless.

### D.   The ALJ Failed to Fully Develop the Record

Plaintiff contends the ALJ failed to fully and fairly develop the record.  P. Mem. at 15-16.  Specifically, plaintiff argues that given her medical developments since the most recent medical opinion in the record, the ALJ should have retained a consultative examiner or medical expert.  *Id*.

1    When the record is ambiguous, the Commissioner has a duty to develop the

2  record.  *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*,

3  276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there

4  is ambiguous evidence or when the record is inadequate to allow for proper

5  evaluation of the evidence"); *Smolen*, 80 F.3d at 1288 ("If the ALJ thought he

6  needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had

7  a duty to conduct an appropriate inquiry, for example, by subpoenaing the

8  physician[ ] or submitting further questions to [him or her].").  This may include

9  retaining a medical expert or ordering a consultative examination.  20 C.F.R.

10  §§ 404.1519a(a), 416.919a(a).  The Commissioner may order a consultative

11  examination when trying to resolve an inconsistency in evidence or when the

12  evidence is insufficient to make a determination.  20 C.F.R. §§ 404.1519a(b),

13  416.919a(b).

14    Here, the ALJ had a duty to retain a consultative examiner or medical expert

15  because the record was ambiguous.  Dr. Uy examined plaintiff in August 2018 and

16  the State Agency physicians provided opinions in September 2018 and January

17  2019.  AR at 85-87, 100-02, 117-19, 132-34, 431-36.  The latest medical records

18  reviewed were from November 2018.  *See id.* at 113.  As the ALJ recognized,

19  plaintiff's shoulder and knee impairments increased in severity since those

20  opinions.  In June 2019 and March 2020, plaintiff underwent left shoulder and left

21  knee surgery.  *Id.* at 608-09, 1040.  Plaintiff also requires right shoulder surgery to

22  treat her torn rotator cuff.  *See id.* at 676.  Given the two surgeries and the

23  uncertainty of their results, the right shoulder surgery recommendation, and the

24  lack of an opinion based on a review of the entire record, the record was

25  ambiguous as to plaintiff's physical limitations.  The ALJ therefore failed to fulfill

26  her duty to develop the record.

27

28

**V.**

**REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Typically, in accordance with the "ordinary remand rule," the reviewing court will remand to the Commissioner for additional investigation or explanation upon finding error by the ALJ. *Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014).  Nonetheless, it is appropriate for the court to exercise its discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits).  But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, there are outstanding issues to be resolved and remand is required.  On remand, the ALJ shall retain a consultative examiner or medical expert and consider the persuasiveness of his or her opinion. The ALJ shall also reconsider

plaintiff's testimony, and either credit her subjective complaints or provide clear and convincing reasons for rejecting them.  The ALJ shall then redetermine which impairments are severe, reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

**VI.**

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.


DATED:  September 29, 2022

_____
SHERI PYM
United States Magistrate Judge